WALLER, Chief Justice,
dissenting:
¶ 28. Because I believe that Johnson’s constitutional right to a speedy trial was violated, I respectfully dissent. I join Presiding Justice Dickinson’s dissent in part only to the extent that he finds that a speedy-trial violation occurred under the facts of this specific case.
DICKINSON, Presiding Justice,
dissenting:
¶ 29. It is no secret that, for the past twenty years, the Sixth-Amendment right to a speedy trial has been under attack and on life support. Although this Court’s previous decisions have suggested that— given the right set of facts — a speedy trial claim could possibly be won, today’s final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today’s plurality opinion is as subtle as a stick of dynamite — the Sixth-Amendment right to a speedy trial in Mississippi is dead.
¶ 80. In previous cases, this Court at least paid lip service to a few speedy-trial maxims, such as “an eight-month delay is presumptively prejudicial” and “no single Barker factor controls” (both discussed later). But today, the plurality — purporting to overrule Smith v. State and its progeny, *1248 and ignoring Flora v. State, State v. Ferguson, and their progeny — makes crystal clear this Court’s position on the right to a speedy trial: the life-support plug has been pulled, and the right to a speedy trial exists no more.[51]
¶ 31. Because I believe the Sixth-Amendment right to a speedy trial is as important to us today as it was when it was proposed by our Founding Fathers in 1789, and ratified by the people in 1791, I respectfully dissent.
BACKGROUND FACTS AND PROCEEDINGS
¶ 32. After he was indicted, Virgil Johnson quickly moved — pro se, in writing — for a speedy trial. When he didn’t get one, he moved — pro se, in writing — for dismissal. He never requested a continuance.
¶ 33. At the beginning of the hearing on Johnson’s speedy-trial motion — despite the 680-day delay — the trial judge observed that Johnson’s trial seemed “pretty speedy.” The State, in addressing why Johnson’s trial had been delayed for 680 days, offered only a casual comment that “it was just due to a congested trial docket.” How crowded, we do not know, as the record includes no evidence to support the State’s claim.
¶ 34. Then, in the following exchange with Johnson’s counsel, Donald Boykin, the trial judge addressed prejudice:
THE COURT: What’s the prejudice? The record speaks for itself as I said before.
MR. BOYKIN: I understand.
THE COURT: What’s the prejudice to the defendant?
MR BOYKIN: I’m prepared to put him on the witness stand, Your Honor.
THE COURT: I’m asking you. We’re not taking any testimony at this time. You’re going to make the argument to the Court what the prejudice is, and then we’re going to pick a jury and try the defendant.[52]
¶ 35. The trial court denied Johnson’s motion, and the case proceeded to trial. Johnson was convicted. He filed a timely appeal, arguing (among other things) that he was denied his constitutional right to a speedy trial.
I.
Since 1992, the Sixth-Amendment right to a speedy trial has been on life support in Mississippi.
¶ 36. In 1972, the United States Supreme Court handed down Barker v. Wingo, [53] which established four factors (the Barker factors, discussed later) state courts must consider when analyzing Sixth-Amendment speedy-trial issues. In the forty years since Barker, this Court has applied the Barker factors to speedy-trial issues in ninety-eight cases — forty before 1992, and fifty-eight since.
¶ 37. Of those first forty cases, all decided prior to 1992, this Court found speedy-trial violations approximately one-fourth of the time. But in the fifty-eight cases decided since 1992, this Court has not found a single violation. Fifty-eight cases in a row over the past nineteen *1249 years — and all decided in favor of the State.[54]
¶ 38. This appalling statistic cannot be explained by a more efficient judiciary that provides quicker trials; indeed, a review of the cases reveals that delays have been getting longer}'[55] Nor can it be explained by changes in the federal law (Barker remains unchanged, and controlling). Sadly, it seems this Court simply no longer is willing to enforce an accused’s constitutional right to a speedy trial.
¶ 39. The plurality — pointing out that, as a member of the post-1992 Court, I personally have “had a hand in crafting the very trend” I now criticize[56] — raises an interesting point. Since beginning my term on this Court in 2004, I have participated in twelve speedy-trial cases.[57] I concurred “in result only” in two of them,[58] dissented in three,[59] and either wrote or joined the majority in the rest. So of the speedy-trial cases in which I have participated, I would have reversed one-quarter — a percentage almost identical to this Court’s pre-1993 reversal rate of constitutional speedy-trial eases.
II.
We are required to apply the Barker factors, all four of which weigh in favor of Johnson.
¶ 40. The U.S. Constitution’s Supremacy Clause requires all state courts to recognize federal law — including the provisions of the United State Constitution — as “the supreme law of the land.”[60] One such constitutional provision — the Sixth Amendment[61] — guarantees the accused in a criminal case a speedy and public trial.[62]
A. The Barker factors
¶ 41. Forty years ago, the United States Supreme Court decided Barker v. Wingo[63] and set forth four factors to be used by state and federal courts in analyzing Sixth-Amendment speedy-trial issues. The four Barker factors are: “Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.”[64] And to the extent the United States Supreme Court has instructed how these factors must be applied, this Court is not free to improvise. But in balancing the Barker factors, this Court has said:
*1250 The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of non-persuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.[65]
¶ 42. Most would agree that our precedent should provide stability, consistency, and predictability to the law. But this Court’s method of weighing and balancing the Barker factors has so significantly shifted since Barker was decided in 1972, that recent opinions bear no resemblance to those of a few decades ago.
1. Length of Delay
¶ 43. The first Barker factor — length of delay — generally concerns the length of time that passes from an accused’s arrest until trial.[66] This Court, addressing a 370-day delay in Smith v. State, held:
What length of time must elapse before prejudice will he presumed? While there are some exceptions to the rule, “it may generally be said that ‘any delay of eight months or longer is ‘presumptively prejudicial.’ ”[67]
¶ 44. Smith and its twenty-year progeny clearly hold that “prejudice will be presumed” when a trial is delayed for “eight months or longer,” and that an eight-month delay requires analysis of the remaining three Barker factors.[68] Also, an eight-month delay causes this first factor — length of delay — to weigh in favor of the defendant.[69]
¶ 45. So if (as our precedent indicates) we really do presume prejudice at eight months (240 days), we certainly must presume it at 680 days, the length of delay in this case. Interestingly, the delay in this case is longer than the delay in almost all of the post-Barker cases reversed by this Court on constitutional speedy-trial grounds.[70]
¶ 46. On the “presumptively prejudicial” point, the plurality takes an interesting position addressed in the “Prejudice” discussion below. But for purposes of analyzing the first Barker factor, the plurality concedes (1) that the 680-day delay is, indeed, presumptively prejudicial, (2) this factor weighs in Johnson’s favor, and (3) *1251 that we must analyze the remaining three Barker factors.
2. Reason for the delay
¶ 47. The plurality correctly recognizes that where (as here) the length of delay is presumptively prejudicial, the burden shifts to the State to provide a satisfactory reason for the delay.[71] But then, the plurality’s analysis of this factor is flawed by its incorrect understanding of what happened at the hearing on Johnson’s motion.
A. Crowded docket
¶ 48. The plurality correctly points out that the trial judge said there were several “older cases” that were set before Johnson’s, which “may have” caused his case to be put off. This statement has several problems.
¶ 49. First, “may have caused” hardly rises to the level of evidence. Second, in referring to “older cases,” the trial judge was referring to Johnson’s date of arraignment (not relevant in a Barker analysis), rather than his date of arrest.
¶ 50. Finally, we pretty clearly said in Flora v. State that “[t]his Court should not be expected to simply accept at face value the claims of crowded dockets, backlogged laboratory testing, and other similar logistical problems, which undeniably exist.”[72] So the plurality says we now accept at face value the claims of crowded dockets. This holding ignores our precedent in Flora v. State.
B. Trial dates
¶ 51. The plurality mistakenly believes the State produced trial dates from the computer system used throughout Hinds County, which showed that Johnson’s case had been set for trial three months after he was arraigned. The record before us does not support this claim. Here’s what really happened:
¶ 52. At the pretrial hearing on Johnson’s motion to dismiss, the prosecutor stated that “[t]he first trial setting was July 16th of '07 from the record that I’ve seen.” When Johnson’s attorney challenged the State to produce proof of that date from the docket or otherwise, the prosecutor could not. And the appellate record, which includes the trial court’s docket sheet, indicates that Johnson had no trial setting earlier than March 11, 2008. No other proof of a trial date — or of an overcrowded docket — was produced by anyone.
C.Even if the delay was caused by an overcrowded docket, this factor — according to Barker — weighs in favor of Johnson.
¶ 53. Because the State produced no evidence to explain the delay, this second Barker factor — reason for the delay— should weigh in favor of Johnson. The Barker Court stated:
A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate de *1252 lay.[73]
¶ 54. First, it is noteworthy that the United States Supreme Court does not include “overcrowded courts” in the “valid reason” category. But more importantly, Barker holds that an overcrowded docket, while “more neutral” than “deliberate delay,” still must be weighed against the State because “the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.” [74]
¶ 55. The plurality awards this second Barker factor “slightly” to Johnson. Even though the plurality’s appreciation of the facts and law on this point are quite different from mine, I do not quarrel with this point. Johnson has, so far, won two out of two factors.
3. Assertion of the right
¶ 56. The plurality concedes that Johnson wins this factor. According to Barker, a “defendant’s assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.”[75] The term “assertion of the right” means to make a demand for a speedy trial. As we have said more than once, a defendant “gains far more points under this prong of the Barker test where he has demanded a speedy trial.”[76] Johnson did.
¶ 57. Less than two months after he was indicted, Johnson filed a pro se “motion for a fast and speedy trial.” After filing a pro se motion to dismiss for violation of his speedy-trial right, Johnson filed what he called a “Motion to Compel,” in which he stated:
Petitioner has several motions pending in court and seeks to swiftly bring them before a magistrate for review to wit: Motion for Fast and Speedy Trial ... Motion to Dismiss For Failure to Provide a Fast and Speedy Trial....
¶ 58. Johnson’s motions were heard on the morning of trial. Nowhere in the transcript of proceedings before the trial court — or in its brief to this Court — does the State even hint that it thinks Johnson should have (or could have)[77] set his motion for hearing earlier.
¶ 59. To its credit, the plurality does not contest that, by winning this factor, Johnson is entitled to the “strong eviden-tiary weight” referred to in Barker, and the extra Barker “points” referred to in Jaco and Ferguson. So this factor weighs “strongly”[78] in Johnson’s favor, and he has now won all three of the first three factors.

This Court’s inconsistent record on three-to-one cases is disturbing.

¶ 60. Before moving to the fourth and final Barker factor, I pause to make a brief observation about where we are at this point. So far, the first three Barker factors clearly weigh in favor of Johnson. Giving the plurality the benefit of the doubt, here is how the factors stack up:
*1253 ¶ 61. Length of delay. Because the length of delay in this case is almost triple the eight-month threshold delay that triggers the presumption of prejudice, this factor surely weighs heavily in Johnson’s favor. Reason for the Delay. This factor, according to the plurality, weighs slightly in Johnson’s favor. Assertion of the right. This factor weighs heavily in Johnson’s favor.
¶ 62. And as set forth below, I believe the fourth factor — prejudice—also weighs in his favor. But even assuming it doesn’t, Johnson wins three factors (two heavily) and loses one. This Court has been confronted with this same three-to-one scenario eighteen times in the forty-year history of the Barker factors — five times through 1992, and thirteen times since. An analysis of those eighteen cases is both instructive and disturbing.
¶ 63. This Court found speedy-trial violations and reversed all five of the three-to-one cases decided through 1992.[79] So during this Court’s first twenty years of Barker analysis, it backed up its perennial claim that no single Barker factor is controlling.[80] But since 1992, this Court has reversed — none. The last thirteen times in a row this Court has reviewed cases in which three of the Barker factors weighed in favor of the defendant, it found no speedy-trial violation.[81]
¶ 64. The only conclusion one can fairly draw from reviewing the three-to-one cases decided since 1992 is that, in reality, defendants cannot win speedy-trial claims before this Court unless they win all four factors. And given this Court’s history, even if a defendant could do all that, there’s still no reason to believe the defendant would actually prevail.
4. Prejudice
¶ 65. In analyzing the prejudice factor, the plurality’s main concern seems to be who had the burden of proof. Yet the plurality seems to be untroubled by the fact that, when the defendant, Johnson, attempted to take the witness stand and testify concerning prejudice, the trial judge prohibited him from doing so.
¶ 66. The plurality’s discussion of this factor is perhaps more disturbing than any of the other three. The plurality concedes, as it must, that the United States Supreme Court has stated, more than once, that a defendant is not required to show prejudice affirmatively to win a Barker analysis.[82] Then the plurality makes a statement that bears repeating:
So while an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial,[83] common logic reveals *1254 that, if a defendant is to win under the fourth prong of the Barker analysis, he must show that he, or his defense, suffered some type of prejudice.[84]
¶ 67. Well, if “an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial,” how in the world can one explain the outcome of the case before us today?
¶ 68. Conceding (solely for the sake of argument) that there was no “affirmative demonstration of prejudice,” even the plurality admits that Johnson won everything else — and two of the factors, he won heavily. So affirmatively demonstrating prejudice was certainly necessary for Johnson “to prove a denial of the constitutional right to a speedy trial.”
¶ 69. Prejudice is the only factor the plurality finds Johnson didn’t win, so it is beyond argument that, in this case, it was indeed necessary for him affirmatively to prove prejudice. Put differently, under the law announced today, how on earth could Johnson or anyone else prevail on a speedy-trial issue without affirmatively demonstrating prejudice? The plurality’s thinking on this point is far above my head and completely escapes me.
¶ 70. As already stated, this Court has said many times that no single Barker factor should control. But in previous cases, this Court has come perilously close to admitting that a Mississippi defendant’s speedy-trial claim is dead, unless he shows actual prejudice.[85] Today, all doubt has been removed. Regardless of the length of delay, or the outcome of any other factor, if you don’t show prejudice, you lose.
¶ 71. The plurality’s undue emphasis on the prejudice factor may be due, in part, to its mistaken belief that preventing prejudice is what the constitutional right to a speedy trial was primarily intended to accomplish. But the United States Supreme Court cleared that up nearly thirty years ago:
The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.[86]
¶ 72. It is not possible to fairly conclude from the plurality opinion anything other than the incorrect notion that the right to a speedy trial is important only to prevent prejudice.
A. Prejudice presumed
¶ 73. The plurality makes far too much of the presumptively-prejudicial issue. All it means is that, where the delay is eight months or more and nothing else gets in the record, prejudice is presumed. And where the defendant offers no additional evidence of prejudice, the State’s burden of overcoming the presumption is light.
*1255 ¶ 74. The plurality is due credit for correctly observing that this Court has employed an “inconsistent analysis of this prong” in past cases.[87] Indeed, this Court specifically has said that “identification of the party with the risk of nonpersuasion” is necessary in determining how to weigh each factor.[88] This is important because the State bears the burden of production (or the risk of nonpersuasion) on the prejudice factor where the length of delay is presumptively prejudicial,[89]
B. The plurality misreads Ferguson v. State and can’t distinguish it.
¶75. In State v. Ferguson, this Court explicitly held: “[T]he burden of production and persuasion are critical. Where the delay has been presumptively prejudicial, the burden [on the prejudice factor] falls upon the prosecution.”[90] It can’t be more clear than that.
¶ 76. But the plurality — unable to distinguish Ferguson — ignores it. It is possible that the plurality’s reticence to follow Ferguson is explained by its misreading of the case, in which we relied on Prince v. Alabama[91] — a Fifth-Circuit case; and Moore v. Arizona[92] — a United States Supreme Court case the plurality cannot overrule.
¶77. The plurality first suggests that we were wrong to rely on Prince for the proposition that a presumptively prejudicial delay shifts the burden to the State on the prejudice factor, subtly twisting Prince’s language to reach that conclusion. In Prince, the Fifth Circuit said,
under our prior holding in Hoskins[ v. Wainwright[93]], where the defendant has established a prima facie case of denial of the speedy trial right, the burden is upon the State to show that the defendant has not been prejudiced by the delay.[94]
¶ 78. The case did not hold — as the plurality reads it — that the defendant must first establish a prima facie case of prejudice, but rather a prima facie case “of denial of the speedy trial right.”[95] While the plurality initially acknowledges that the burden shifts to the State on a prima facie showing of violation of the speedy-trial right, a few sentences later, the plurality morphs this critical language to say that “Johnson does not come close to showing a prima facie case of actual prejudice ....”[96]
¶ 79. Again, a proper reading of Prince along with Hoskins I — the pre-Barker case on which Prince relied — clearly reveals that a defendant must make a prima face case of violation, not of prejudice, to shift the burden to the State
by showing that his prosecution was delayed beyond the point at which a probability of prejudice arose, that he was not responsible for the delay, and that the State ought reasonably to have avoided the delay. In these circumstances the *1256 State should be given the burden of proving that the delay was necessary and that no prejudice in fact occurred.[97]
That was the case in Ferguson, and that is the case here.
¶ 80. I also note with bemusement that, in its attempt to use Prince to prove that Ferguson was wrongly decided, the plurality skips right over Prince's observation that
we are not compelled to consider the question of prejudice by reason of our holding in Hoskins III[98] ..., that prejudice is immaterial where consideration of the other three factors — length of delay, defendant’s assertion of his right, and reasons for the delay — coalesce in the defendant’s favor. ... [99]
This holding could not be more clear: When the defendant wins the first three Barker factors, prejudice is immaterial, and the court need not even look at it. And this holding is not just a peculiarity of the Fifth Circuit. As Hoskins III noted, this conclusion is mandated by Barker itself:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[100]
If this means what it says, there must be some point of coalescence of the other three factors in a movant’s favor, at which prejudice — either actual or presumed — becomes totally irrelevant. And so we hold.[101]
¶ 81. This simply makes sense. If “none of the four factors [is] a necessary ... condition,” this has to mean that a defendant cannot lose the test solely by losing one factor (as Johnson does today). The United States Supreme Court has said it, the Fifth Circuit has said it, and this Court said it in Ferguson.
¶ 82. In Moore, the United States Supreme Court reviewed a case in which the Supreme Court of Arizona did[102] exactly what the plurality does today. The defendant had suffered a prolonged delay despite his attempt to secure a speedy trial, and the only reason proffered by the State was overcrowded dockets.[103]
¶ 83. The Arizona Supreme Court weighed the first three Barker factors in favor of the defendant, but nevertheless held that his speedy-trial right was not violated because he had failed to show actual prejudice caused by the delay.[104] On appeal, the United States Supreme Court denounced that conclusion:
The state court was in fundamental error in its reading of Barker v. Wingo and in the standard applied in judging *1257 petitioner’s speedy trial claim. Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial.... [105]
¶ 84. In Ferguson, this Court followed Moore exactly. We held that, because an eight-month delay was presumptively prejudicial, and because the defendant may not be required to affirmatively demonstrate prejudice, it necessarily falls to the State to come forward with some evidence indicating that the delay in fact resulted in no prejudice to the accused.[106] And since Ferguson, we have reiterated that same point — albeit inconsistently — in numerous other cases.[107] The plurality now rejects the holdings in Hoskins III, Ferguson, Barker, and Moore.
C. The plurality misreads Smith v. State, can’t distinguish it, and so purports to overrule it.
¶ 85. After conceding that the delay in this case was presumptively prejudicial, the plurality attempts to redefine the term. (Stay tuned in case the meaning of “presumed innocent” is challenged in some future case.) The phrase “presumptively prejudicial” is not complicated. Black’s Law Dictionary defines a “presumption” as:
A legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts.... A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption.[108]
¶ 86. If the phrase “presumptively prejudicial” means anything, it must mean that, in the absence of contrary evidence produced by the State, the court must conclude that the defendant was prejudiced by the delay.
¶ 87. But the plurality rejects this straightforward meaning, opting instead to read “presume prejudice” merely to mean “look at the other Barker factors.” For *1258 support, the plurality cites a footnote in Doggett v. United States,[109] in which the United States Supreme Court cited — with approval — a law-review article that discussed the meaning of presumptive prejudice, explicitly acknowledging that presumptive prejudice does indeed shift the burden to the State.[110]
D. The State produced nothing to rebut the three prejudice interests identified in Barker.
¶ 88. In Barker, the United States Supreme Court identified and discussed three prejudice interests: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defendant’s defense.[111] And since the 680-day delay in this case was presumptively prejudicial, it should fall to the State to rebut the presumption, or the “prejudice” factor must be weighed in favor of Johnson.
1. Oppressive Pretrial Incarceration
¶ 89. Johnson was in jail the entire time between his arrest and trial. He made repeated requests for bail reduction, but they were ignored (not denied, ignored). The State offered nothing in rebuttal.
2. Anxiety and Concern
We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness.... Imposing those consequences on anyone who has not yet been convicted is serious.[112]
¶ 90. The plurality refuses to award Johnson this prong because he presented no evidence of “anxiety and concern,” never mind that he was prevented from working in order to provide for his child and sick mother,[113] and never mind that the circuit judge refused to allow him to testify at the speedy-trial hearing. I find inability to fulfill one’s role as the sole caretaker of a cancer-ridden mother and a minor child to be more than sufficient to demonstrate legitimate anxiety and concern.[114] I find it amazing that the circuit judge refused to allow Johnson to testify. And in any case, the State offered nothing in rebuttal.

3.Impairment of the Defendant’s Defense

¶ 91. Of the three prongs of the prejudice factor, this one is the “most serious.” [115] Aside from referencing a last-minute witness who did not even testify at trial, the State offered nothing to demonstrate that Johnson’s defense was not impaired.
¶ 92. But even assuming the State did not have the burden of production, a de *1259 fendant is not required to establish actual impairment to succeed on his constitutional speedy-trial claim.[116] An accused who prevails on three of the four Barker factors— and who also prevails on two of the three prongs of the fourth Barker factor — should not lose the entire Barker balancing test solely on this single prong of one of the factors.
E. Balancing
¶ 93. Although one could fairly debate the weight due each of the first three Barker factors,[117] there is no doubt that all three weigh in favor of Johnson. In a case almost on all fours with this one, we held:
While this record contains little evidence of prejudice, the reason for giving weight to the other factors is the obvious difficulty in establishing through objective hard evidence the fact of prejudice even when it does exist. Moreover, there is nothing in the constitutional provisions at issue qualifying the right to a speedy trial so that its assertion depends upon a showing of prejudice. Where, as here, the accused effectively demanded trial and where there was a substantial unjustified delay in bringing him to trial, the fact that the Defendant’s prejudice showing is weak avails the prosecution little.[118]
¶ 94. So even if one agrees that the prejudice factor favors the State, this case still should be reversed.
Under both Barker and Bailey[119], three factors weigh against the state: (1) assertion of the right by Burgess, (2) the reason for the delay by the state, and (3) the length of the delay. These outweigh item (⅛) prejudice, if the Barker and Bailey holdings that no one factor is dispositive are to have any meaning at all.
If this were not so, the state could sit back and deliberately hold criminal charges against a citizen indefinitely so long as the individual could not point out any specific prejudice.[120]
¶ 95. Constitutional rights are guaranteed to all criminal defendants, regardless of the ultimate disposition of their cases.[121] Today, this Court acquiesces in the violation of Virgil Johnson’s Sixth-Amendment right to a speedy trial. Accordingly, I dissent — not because of any personal concern for Johnson himself, but because of my deep concern for the twenty-year erosion of the constitutional right itself.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.
*1260 APPENDIX A
The following graph represents every post-Barker case from this Court, in which the length of delay is discernible in the opinion. For each case, the length of delay (in days) is represented by a dot. The dashed line was calculated using the “trend line” function in Microsoft Excel, and indicates that the delays generally are getting longer and longer.
[[Image here]]

. Actually, since today’s case is decided by a plurality rather than a majority, there is some small chance that a spark of life still burns. We'll see.

. This statement reminds me of a judge, now deceased, who was fond of saying, “Marshal, bring in the criminals and let’s give’ em a fair trial!”

. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. The last case this Court reversed on Sixth Amendment speedy-trial grounds was Jenkins v. State, 607 So.2d 1137 (Miss.1992).

. Between 1974 and 1992, the average delay in opinions that included the time of delay was 539 days. Since 1992, the average delay has been 609 days. See Appendix A.

. Plur. Op. at ¶ 21.

. McBride v. State, 61 So.3d 138 (Miss.2011); Thomas v. State, 48 So.3d 460 (Miss.2010); Moffett v. State, 49 So.3d 1073 (Miss.2010); Scott v. State, 8 So.3d 855 (Miss.2008); Murray v. State, 967 So.2d 1222 (Miss.2007); Jenkins v. State, 947 So.2d 270 (Miss.2006); Flora v. State, 925 So.2d 797 (Miss.2006); Stark v. State, 911 So.2d 447 (Miss.2005); Price v. State, 898 So.2d 641 (Miss.2005); Manix v. State, 895 So.2d 167 (Miss.2005); Young v. State, 891 So.2d 813 (Miss.2005); Hersick v. State, 904 So.2d 116 (Miss.2004).

. Scott, 8 So.3d 855; Jenkins, 947 So.2d 270.

. McBride, 61 So.3d 138; Thomas, 48 So.3d 460; Flora, 925 So.2d 797.

. U.S. Const, art. VI, cl. 2.

. U.S. Const, amend. VI.

. To appreciate the importance of the Sixth Amendment, one need only consider Edmond Dantés’s consignment to the Chateau d’lf in "The Count of Monte Cristo.”

. Barker, 407 U.S. at 530, 92 S.Ct. 2182.

. Id.

. Price, 898 So.2d at 648 (citing Beavers v. State, 498 So.2d 788, 790 (Miss.1986)).

. United States v. Hitt, 622 F.2d 900, 909 (5th Cir.1980) ("The Sixth Amendment clock begins to tick upon indictment when no prior arrest on the alleged offense is involved.”) (citing Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975) (per curiam): United States v. Marion, 404 U.S. 307, 320-21, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

. Smith v. State, 550 So.2d 406, 408 (Miss.1989) (emphasis added) (citing 2 W. LaFave & J. Israel, Criminal Procedure § 18.2 (1984) (quoting Gregory P.N. Joseph, Speedy Trial Rights in Application, 48 Fordham L. Rev. 611, 623 n. 71 (1980))).

. See, e.g., Thomas, 48 So.3d at 475; Murray, 967 So.2d at 1230; Jenkins 947 So.2d at 276; Manix, 895 So.2d at 176; Young, 891 So.2d at 817.

. See, e.g., Price, 898 So.2d at 648; Manix, 895 So.2d at 176; Stevens v. State, 808 So.2d 908, 916 (Miss.2002); Herring v. State, 691 So.2d 948, 955 (Miss.1997); Moffett, 49 So.3d at 1086; Stark, 911 So.2d at 450; Hersick, 904 So.2d at 121; Brengettcy v. State, 794 So.2d 987, 992 (Miss.2001).

. State v. Ferguson, 576 So.2d 1252 (Miss.1991) (288 days); Flores v. State, 574 So.2d 1314 (Miss.1990) (610 days); Smith v. State, 550 So.2d 406 (Miss.1989) (370 days); Beavers v. State, 498 So.2d 788 (Miss.1986) (423 days); Bailey, 463 So.2d 1059 (298 days); Burgess v. State, 473 So.2d 432 (Miss.1985) (16 months); Perry v. State, 419 So.2d 194 (Miss.1982) (566 days).

. Plur. Op. at ¶ 8 (citing Jenkins, 947 So.2d at 276-77).

. Flora, 925 So.2d at 817 (weighing the "reason-for-delay” factor in favor of defendant).

. Barker, 407 U.S. at 531, 92 S.Ct. 2182 (emphasis added).

. Id.

. Barker, 407 U.S. at 531-32, 92 S.Ct. 2182.

. Ferguson, 576 So.2d at 1255; Jaco v. State, 574 So.2d 625, 632 (Miss.1990) (emphasis added).

. It appears Johnson could not have brought his up motion for hearing, even if he wanted to. According to the trial court's local rule: “Hearings are not automatically granted. ... Should the court require a motion hearing, the party filing the motion shall be notified by the court.” Judge Tomie Green, Procedures for Pretrial Matters Rule 1 (Rev. Sept. 2008).

. Barker, 407 U.S. at 531-31, 92 S.Ct. 2182.

. Flores, 574 So.2d 1314; Smith, 550 So.2d 406; Vickery v. State, 535 So.2d 1371 (Miss.1988); Beavers, 498 So.2d 788; Burgess, 473 So.2d 432.

. Thomas, 48 So.3d at 475 (citing Poole v. State, 826 So.2d 1222, 1228-1229 (Miss.2002)); Moffett, 49 So.3d at 1086; Jenkins, 947 So.2d at 276; Price v. State, 898 So.2d at 648 (citing Beavers, 498 So.2d at 790); Ginn v. State, 860 So.2d 675, 683 (Miss.2003).

. Flora, 925 So.2d 797; Manix, 895 So.2d 167; Stevens, 808 So.2d 908; Arthur v. State, 735 So.2d 213 (Miss.1999); Duplantis v. State, 708 So.2d 1327 (Miss.1998); Hull v. State, 687 So.2d 708 (Miss.1996); Skaggs v. State, 676 So.2d 897 (Miss.1996); Taylor v. State, 672 So.2d 1246 (Miss.1996); McGhee v. State, 657 So.2d 799 (Miss.1995); Giles v. State, 650 So.2d 846 (Miss.1995); Rhymes v. State, 638 So.2d 1270 (Miss.1994); Hurns v. State, 616 So.2d 313 (Miss.1993); Ross v. State, 605 So.2d 17 (Miss.1992).

. Moore, 414 U.S. at 26, 94 S.Ct. 188 (emphasis added).

. See Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183, 185 (1973).

. Plur. Op. at ¶ 15.

. See, e.g., Arthur, 735 So.2d at 216 (finding no violation despite the defendant winning three of the four Barker factors: "The final Barker factor is the resulting prejudice to Arthur. This is where Arthur loses his argument.’’) (emphasis added).

. United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982) (emphasis added).

. Plur. Op. at ¶ 11.

. Price, 898 So.2d at 648 (citing Beavers, 498 So.2d at 790).

. Plur. Op. at ¶ 11.

. Ferguson, 576 So.2d at 1255 (emphasis added).

. Prince v. Alabama, 507 F.2d 693 (5th Cir.1975).

. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).

. Hoskins v. Wainwright, 440 F.2d 69, 72 (5th Cir.1971) (hereinafter "Hoskins I ”).

. Prince, 507 F.2d at 707 (emphasis added).

. Id.

. Plur. Op. at ¶ 11 (emphasis added).

. Hoskins I, 440 F.2d at 72 (emphasis added) (citing Dickey v. Florida, 398 U.S. 30, 56, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970)).

. Hoskins v. Wainwright, 485 F.2d 1186, 1192 (5th Cir.1973) (hereinafter Hoskins III) (emphasis added).

. Prince, 507 F.2d at 706-07 (emphasis added).

. Barker, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

. Hoskins III, 485 F.2d at 1192 (emphasis added).

. Arizona v. Moore, 109 Ariz. 111, 506 P.2d 242 (1973).

. Id. at 245.

.Id.

. Moore, 414 U.S. at 26, 94 S.Ct. 188 (emphasis added).

. Ferguson, 576 So.2d at 1255.

. See, e.g., Ginn, 860 So.2d at 684 (quoting Ferguson, 576 So.2d at 1255) (“We have held: '[W]hen the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant.' ”); Stevens v. State, 808 So.2d at 917 (“Stevens does not bear the burden of proving actual prejudice in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the State to show that the delay did not prejudice the defendant.”); Birkley v. State, 750 So.2d 1245, 1252 (Miss.1999) (quoting Ferguson, 576 So.2d at 1255) ("In analyzing this final factor the Court must also take note of the burden of production and persuasion. In Ferguson, this Court stated, 'Where the delay has been presumptively prejudicial, the burden falls upon the prosecution.’ ”); Duplantis, 708 So.2d at 1335 (“Du-plantis does not bear the burden of proving actual prejudice in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant.”); Beckwith v. State, 707 So.2d 547, 567 (Miss.1997) ("Beckwith need not prove actual prejudice to his defense in this case. On the contrary, when the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant.”); Jasso v. State, 655 So.2d 30, 35 (Miss.1995) ("This Court has stated that the State actually has to show lack of prejudice in order to prevail in this factor.”); Ross, 605 So.2d at 23 (“The analysis must, then, proceed to the other three Barker factors, in which the state bears the burden of proving no prejudice to the defendant.”).

.Black's Law Dictionary 1304 (9th ed.2009) (emphasis added).

. Doggett v. United States, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992).

. H. Richard Uviller, Barker v. Wingo: Speedy Trial Gets a Fast Shuffle, 72 Colum. L. Rev. 1376, 1394-95 (1972) ("[T]he shift of burden actually permits the presumption of prejudice to prevail on the issue. Since that presumption is well-founded, however, justice is served.”).

. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

. Id. at 532-33, 92 S.Ct. 2182.

. Plur. Op. at ¶ 17.

. After the circuit judge refused to allow Johnson to testify, this information was provided to the circuit judge by Johnson’s lawyer.

. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

. Flores, 574 So.2d at 1323 (citing Trotter v. State, 554 So.2d 313, 318 (Miss.1989)) ("it is clear that an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial”).

. See, e.g., Flores, 574 So.2d at 1323 ("The only Barker factor that does not favor VanEt-ten is that he did not aggressively assert his right to a speedy trial. All the other Barker factors weigh in his favor. Therefore, VanEt-ten was denied his constitutional right to a speedy trial.”); Smith v. State, 550 So.2d at 409 ("The only Barker factor which weighs against Smith is that he did not assert his right to a speedy trial until five days before trial began. All the other Barker factors weigh in his favor. Based upon a balancing of the four Barker factors, we hold that Smith was denied his constitutional right to a speedy trial.”).

. Beavers, 498 So.2d at 792 (emphasis added) (reversing and rendering).

. Bailey, 463 So.2d 1059.

. Burgess v. State, 473 So.2d at 434 (emphasis added).

. Id. (“Even the indisputably guilty defendant has the constitutional right to a speedy trial.”).