# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00859-SCT

*ORLANDO JENKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2005 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAYMOND M. BAUM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Orlando Jenkins was convicted in the Attala County Circuit Court of the murder of Andre Porter Barnes and sentenced to life in prison. On appeal, Jenkins argues (1) the indictment against him should be dismissed because the State violated his statutory and constitutional rights to a speedy trial, and (2) he should be granted a new trial because his conviction was against the overwhelming weight of the evidence. Finding that each of Jenkins' claims is without merit, we affirm the judgment of the trial court.

## FACTS

¶2.    In the evening on July 10, Jenkins' co-indictee, Dewon Winters, and a female companion met Jenkins at the Hannah Heights apartment complex in Ethel, Mississippi. Jenkins approached Barnes at the complex and convinced him to accompany them in Winters' car. Winters left his companion at a trailer belonging to his sister, and he, Jenkins, and Barnes drove to a remote dirt road. Winters maintains that Jenkins then shot and killed Barnes with Winters' gun. Jenkins claims Winters killed Barnes.

¶3.    The two men hid Barnes' body in the woods and returned to the trailer, where they found Winters' cousin and his girlfriend with Winters' companion. Winters and Jenkins placed their clothing and the gun and bullets used in the crime in a bag and told Winters' cousin to bury it. Winters, his companion, and Jenkins then drove to Jackson. Winters' cousin borrowed a shovel from another cousin and buried the evidence. Barnes' sister overhead Winters' cousin ask about the shovel. She found the request suspicious, and when she could not find her brother in the morning on July 11, she notified the police that Winters' cousin might be involved in Barnes' disappearance. Winters' cousin implicated Winters and Jenkins, and the police arrested Jenkins on July 11, 2003. Winters fled the state, and was arrested in Illinois nine months later.

¶4.    On August 4, 2003, the police officer investigating the case sent Jenkins' clothes to the Mississippi Crime Lab for serology analysis to determine if there was blood on the clothing. Winters and Jenkins were indicted together for murder on March 4, 2004. On July 29, 2004, the state crime lab confirmed that there was blood on Jenkins' shoes. Jenkins filed a motion for severance which was granted by the trial court on August 26, 2004. On September 17, 2004, Jenkins filed a motion to dismiss his indictment for want of a speedy trial. On

2

September 24, 2004, the police requested DNA testing of the blood found on Jenkins' shoes. The report on the DNA testing, which confirmed that Jenkins' shoes had the victim's blood on them, was issued in March of 2005.

¶5.     Jenkins' trial began on March 28, 2005.    Winters testified for the prosecution at Jenkins' trial, stating that he and Jenkins were involved in a drug deal together and that Jenkins killed Barnes for disrespecting him.   Jenkins maintained that he did not know Winters and that Winters killed Barnes because Barnes would not give him information.   After being convicted of murder on March 31, 2005, and sentenced to life in prison, Jenkins appeals.

**DISCUSSION**

**I.     STATUTORY AND CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL**

¶6.     Jenkins claims that the delay in his trial violates both his statutory right to a trial within 270 days of his arraignment under Miss. Code Ann. § 99-17-1 (2006) and his constitutional right to a speedy trial under the Sixth and Fourteenth Amendments to the U.S. Constitution, Article 3, section 26 of the Mississippi Constitution, and the United States Supreme Court's holding in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

¶7.     Jenkins asserted his right to a speedy trial, or a dismissal of his indictment in the alternative, on September 17, 2004.   The circuit court granted Jenkins motion on September 22, 2004, and ordered his trial set for the first weeks of October 2004.   For reasons that are not provided in the record, Jenkins was not tried in October 2004, and his trial was set for March 28, 2005.   On March 2, 2005, Jenkins filed a second motion to dismiss his indictment for want of a speedy trial.   Another trial judge considered Jenkins' motion on March 3, 2005, and found that neither Jenkins' statutory right nor his constitutional right to a speedy trial had

3

been violated. Jenkins renewed his motion again at the beginning of the trial on March 28, 2005, noting that one of his witnesses could not be found. The State argued that the proposed testimony of the missing witness concerned issues not in dispute by the State, that the testimony was duplicative of other witnesses' testimony, and that Jenkins therefore suffered no prejudice. The trial judge reserved ruling on the issue until the close of Jenkins' case. After the close of Jenkins' case, the trial judge found that, because the proposed testimony was cumulative, Jenkins suffered no prejudice from its absence. He therefore denied the motion to dismiss.

¶8. Reviewing a trial court's denial of a motion to dismiss for want of a speedy trial "necessarily entail[s] questions of fact regarding whether the trial delay rose from good cause." *Manix v. State*, 895 So. 2d 167, 173 (Miss. 2005) (citing *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998)). We adopt a deferential standard of review for such factual determinations and will reverse only if the trial court's decision is clearly erroneous. *Id.* (citing *Stokes v. State*, 548 So. 2d 118, 122 (Miss.1989)). We will uphold the trial court's decision based on substantial, credible evidence of a finding of good cause. *Young v. State*, 891 So. 2d 813, 817 (Miss. 2005) (citing *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991)).

### A. The Statutory Right

¶9. Section 99-71-1 of the Mississippi Code requires that all offenses be tried within 270 days of arraignment, unless the court shows good cause and enters a continuance.[1] The statute

---

[1]"Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (2006).

4

is not applicable to delays between the alleged act and the indictment. *Coleman v. State*, 725 So. 2d 154, 156 (Miss. 1998). When the accused is not tried within 270 days of his arraignment, the State has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial. *Herring v. State*, 691 So. 2d 948, 953 (Miss. 1997); *Perry v. State*, 419 So. 2d 194, 199 (Miss. 1982)

¶10. Delays caused by a backlog at state or federal crime lab constitute good cause and will not be attributed to the State. *See Manix v. State,* 895 So. 2d 167, 176 (Miss. 2005) (delay caused by backlog in state crime lab does not prejudice State); *State v. Magnusen,* 646 So. 2d 1275, 1281 (Miss. 1994) (five-month delay by crime lab not attributed to State); *Gray v. State,* 728 So. 2d 36, 48 (Miss. 1998) (delay caused by FBI crime lab does not weigh in favor of defendant). This Court has also recognized congested dockets as good cause. *Herring*, 691 So. 2d at 953; *Folk v. State*, 576 So. 2d 1243 (Miss. 1991).

¶11. There was a delay of 389 days between Jenkins' arraignment on March 4, 2004, and the beginning of his trial on March 28, 2005. The delay from March 4, 2004, to July 29, 2004, was due to the backlog at the state crime lab, which the trial court found to be good cause. The delay from July 29, 2004, to September 21, 2004, was due to the investigating officer's deployment with the military, which the trial court found to be good cause. The delay from September 21, 2004, to March 27, 2005, was due to delays in DNA testing, requested from the state crime lab but ultimately performed by a private company, which the trial court also found to be good cause. Finally, on its own initiative, the trial court noted that its docket was

congested, and that the court would not have been able to try Jenkins between October 1, 2004, and March 7, 2005.

¶12.    In the trial court's hearing on Jenkins' motion to dismiss for violation of the right to a speedy trial, the State provided witnesses from the police, the state crime lab, and the district attorney's office, all of whom testified to the delays caused by the crime lab's personnel shortages and backlog of requests.  The determinations of the trial court were supported by substantial, credible evidence of good cause.  Therefore, Jenkins' statutory right to a speedy trial was not violated by the delay.

### B.    The Constitutional Right

¶13.    Jenkins also claims that the delay of his trial violated his constitutional right to a speedy trial.  The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  In *Barker v. Wingo*, the United States Supreme Court articulated the standard of review for determining whether the constitutional right to a speedy trial has been violated.  407 U.S. 514; *see also* ***Brengettcy v. State***, 794 So. 2d 987, 992 (Miss. 2001).  Under the ***Barker*** test, courts must balance: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay.  No one factor is dispositive.  ***Poole v. State***, 826 So. 2d 1222, 1229-30 (Miss. 2002).

### (1)    The Length of the Delay

¶14.    The length of the delay is a threshold issue under ***Barker***.  407 U.S. at 530. The ***Barker*** factors will be considered only if the length of the delay is "presumptively prejudicial" to the

6

defendant. *Barker*, 407 U.S. at 530; *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). The constitutional right to a speedy trial, unlike the statutory right created by Miss. Code Ann. § 99-17-1, attaches when a person has been effectively accused of a crime. *Magnusen*, 646 So. 2d at 1278 (citing *Box v. State*, 610 So. 2d 1148 (Miss. 1992)). A delay in excess of eight months between arrest and trial is sufficient to trigger analysis under *Barker*. *Manix*, 895 So. 2d at 176; *Skaggs v. State*, 676 So. 2d 897, 900 (Miss. 1996).

¶15. There was a delay of 626 days between Jenkins' arrest on July 11, 2003, and the beginning of his trial on March 28, 2005. The delay is therefore presumptively prejudicial, and the remaining *Barker* factors must be considered.

### (2)	The Reason for the Delay

¶16. Once the delay is found to be presumptively prejudicial, the burden shifts to the State to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons. *Herring*, 691 So. 2d at 955-956; *State v. Ferguson*, 576 So. 2d 1252, 1254 (Miss. 1991). A delay by the State is justified by a showing of good cause. *Ross v. State*, 605 So. 2d 17, 22 (Miss. 1992).

¶17. Approximately 520 days of the 626 day delay can be attributed to either the state crime lab or the private company subsequently hired to complete the DNA testing requested by the State. Delays unintentionally caused by the State will not be weighed as heavily against the prosecution as delays intended to hurt the defendant's case. *Jenkins v. State*, 607 So. 2d 1137, 1138-1140 (Miss. 1992) (citing *Williamson v. State*, 512 So. 2d 868, 876 (Miss. 1987)). This Court has also been reluctant to weigh delay heavily against the State when the cause is

an instrumentality of the State, such as the state crime lab. *See Manix*, 895 So. 2d at 176; *Gray*, 728 So. 2d at 48; *Magnusen*, 646 So. 2d at 1281.

¶18. The trial court's determination that the delays should not be weighed against the State was based on credible evidence from the record. The second *Barker* factor favors neither party.

### (3) Assertion of Right

¶19. While the State bears the burden of bringing a defendant to trial, a defendant's assertion of his right to a speedy trial weighs more heavily in his favor than not asserting it. *Manix*, 895 So. 2d at 176. However, the demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial, because such a motion seeks discharge and not trial. *See*, *e.g.*, *Stark v. State*, 911 So.2d 447 (Miss. 2005). Jenkins asserted his right to a speedy trial on September 17, 2004, 433 days after his arrest and 197 days after his arraignment, and requested a dismissal of the indictment in the alternative. This motion constituted a valid assertion of his right to a speedy trial. The third *Barker* factor therefore favors Jenkins.

### (4) Prejudice to the Defendant

¶20. Jenkins alleges that his case was prejudiced in two ways. First, he claims his incarceration from July of 2003 to March of 2005 caused him anxiety and concern, one of the interests contemplated by the U.S. Supreme Court in *Barker*. Second, he claims that he was prejudiced because at the beginning of his trial, he was unable to locate a previously-subpoenaed witness.

¶21. In considering whether Jenkins was prejudiced by the delay, we must look to the three interests for which the speedy trial right was designed: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Mitchell v. State*, 792 So. 2d 192, 213 (Miss. 2001); *Barker*, 407 U.S. at 532. Generally, proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation. *Sharp v. State*, 786 So. 2d 372, 381 (Miss. 2001) (citations omitted). The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice as a result of delay. *Id*. Mississippi case law does not recognize as prejudice the negative emotional, social, and economic impacts that accompany incarceration. *Manix*, 895 So. 2d at 177 (citing *Hughey v. State*, 512 So. 2d 4, 11 (Miss. 1987)). Consequently, a defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal. *Ross*, 605 So. 2d at 23.

¶22. Because we have declined to recognize the negative impacts of incarceration as prejudicial, Jenkins' incarceration alone does not constitute prejudice, and his first claim is without merit. Jenkins' second claim of prejudice was considered by the trial court at the end of his case-in-chief. The trial judge's determination that the proposed testimony of the missing witness would be cumulative and that its absence was not prejudicial was supported by credible evidence in the record. The fourth *Barker* factor favors the State.

C.    **Conclusion**

9

¶23. The trial court was well within its discretion in finding that the four **Barker** factors favored the State and that the delay in Jenkins' trial did not violate either his statutory or his constitutional right to a speedy trial. The trial court carefully considered Jenkins' claims and conscientiously applied the appropriate judicial tests to determine whether his rights had been violated. Finding no error by the trial court, we find the first assignment of error is without merit.

## II. WEIGHT OF THE EVIDENCE.

¶24. Jenkins claims that the trial court erred in refusing to grant his motion for a new trial because the verdict was against the overwhelming weight of the evidence. The standard of review for denial of a motion for new trial is well-established. This Courts sits as a "thirteenth juror" and, in determining whether a jury verdict is against the overwhelming weight of the evidence,

> this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

**Baker v. State**, 802 So. 2d 77, 81 (Miss. 2001) (citing **Dudley v. State**, 719 So. 2d 180, 182 (Miss. 1998)).

¶25. Jenkins claims that the only evidence against him was the uncorroborated testimony of his co-indictee Winters. He cites several cases for the proposition that convictions based solely on the such testimony may be reversed if the testimony is unreasonable, improbable, or self-contradictory. *see*, *e.g.*, **Mister v. State**, 190 So. 2d 869 (Miss. 1966). Jenkins argues

that inconsistencies between Winters' testimony and that of other witnesses prove that Winters' testimony is self-contradictory and improbable.

¶26. Jenkins is mistaken in his reliance on our rule for the uncorroborated testimony of an interested party. His conviction was not based solely on the testimony of his co-indictee, but also on eyewitness testimony and DNA evidence. Any conflicts between witnesses' accounts are properly weighed by the jury. When the evidence is conflicting, "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. . . . In other words, the credibility of witnesses is not for the reviewing court." *Scott v. State*, 796 So. 2d 959, 968 (Miss. 2001). Sitting as a thirteenth juror and viewing the evidence in the light most favorable to the judgment, we cannot say that an unconscionable injustice resulted from the jury's guilty verdict. *See **Bush v. State***, 895 So. 2d 836, 844-45 (Miss. 2005). The second assignment of error is without merit.

**CONCLUSION**

¶27. Because each of Jenkins' two claims of error is without merit, we affirm the judgment of the trial court.

¶28. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVELY TO ANY SENTENCE PREVIOUSLY IMPOSED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY.**