# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00560-SCT

*MICHAEL TAYLOR a.k.a.*
*MICHAEL A. TAYLOR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/2009 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE MCMILLIN |
| | GEORGE T. HOLMES |
| | ALICE THERESA STAMPS |
| | VIRGINIA LYNN WATKINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The Circuit Court of Hinds County convicted Michael Taylor of aggravated assault and sentenced him to five years.  On appeal, Taylor's counsel filed a ***Lindsey*** brief, stating that she had identified no appealable issues.[1]  After an independent review of the record and the briefs, we conclude that there are no reversible issues.

---

[1] ***Lindsey v. State***, 939 So. 2d 743 (Miss. 2005).

**Facts and Procedural History**

¶2.     On January 6, 2007, Michelle Finney arrived at a child's birthday party and parked her car on the street, blocking Michael Taylor's car in a driveway. An argument and fistfight ensued. After bystanders broke up the fight, Taylor shot Finney in the arm and fled. Two days later, Taylor was at friend's house when law enforcement officers arrived to execute unrelated arrest warrants. Taylor was detained after he tried to flee out a window in the back of the house. The officers brought everyone present to the living room and searched for weapons. An investigator noticed a black coat on the couch, which Taylor claimed. Upon discovering a handgun and narcotics in the jacket, the officers arrested Taylor for possessing the narcotics and for being a felon in possession of a firearm. Later that day, police obtained an arrest warrant for Taylor's alleged aggravated assault on Finney.

¶3.     In May 2007, a Hinds County grand jury indicted Taylor for the aggravated assault on Finney and for being a felon in possession of a firearm on the day of the assault. Eighteen months passed from the time Taylor was indicted until his trial. He raised a speedy trial claim in the circuit court, but it was denied by the trial judge. Taylor's trial was held in December 2008. The jury returned a guilty verdict on the aggravated-assault charge; the felon-in-possession charge was retired to the files. Taylor was sentenced to five years in the custody of the Mississippi Department of Corrections with three years suspended. On appeal, Taylor's counsel filed a brief stating that she had identified no appealable issues. The Court reviewed the record and requested supplemental briefing, which the parties submitted.

**Discussion**

¶4.     The instant appeal is governed by *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), in which the Court established the procedure to be followed when "appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶ 18).

> First, appellate counsel "must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4), (7)[.]" [*Lindsey*, 939 So. 2d at 748 (¶ 18)]. Second, counsel must certify in his or her brief that:
>
>> there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
>
> *Id.* Third, counsel must send a copy of his brief to the defendant, inform the defendant that counsel could not find any appealable issues, and advise the client of the right to file a pro se brief. *Id.* Fourth, the appellate court will determine, based on its review of the record and any pro se brief filed, if there is any arguable issue. *Id.* If so, the court will require appellate counsel to submit supplemental briefing on that issue, "regardless of the probability of the defendant's success on appeal." *Id.* Last, "[o]nce briefing is complete, the appellate court must consider the case on the merits and render a decision." *Id.*

*Easley v. State*, 46 So. 3d 345, 347 (¶ 11) (Miss. 2010). *See also Lyons v. State*, 125 So. 3d 653, 656-57 (¶¶ 12-13) (Miss. 2013).

¶5.     Taylor's counsel complied with the requirements set forth in *Lindsey* and filed a brief stating that she had scoured the record and had identified no appealable issues. The State agreed that the case was devoid of arguable issues and asked that Taylor's conviction and sentence be affirmed. Taylor did not file a pro se brief. Pursuant to *Lindsey*, the Court

reviewed the record and requested supplemental briefing on two issues – one issue being whether Taylor's right to a speedy trial was violated. After reviewing the briefs and the record, we conclude that there are no issues that warrant reversal. Because the dissent disagrees on the speedy-trial issue and addresses that issue in depth, we provide our analysis as well.

¶6.     Speedy-trial claims are analyzed under the *Barker* test, which requires a balancing of four factors: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* Court explained that each case must be considered "on an ad hoc basis" and that it sought only to "identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial. *Id.* The Court wrote:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id.* at 533. *See also* **Bateman v. State**, 125 So. 3d 616, 633 (¶ 59) (Miss. 2013) (the *Barker* factors must be balanced "along with other relevant circumstances").

### 1. *Length of Delay*

¶7.     Both parties recognize that fifteen months elapsed from the date Taylor was indicted in August 2007 until his trial in December 2008. However, Taylor was in custody for several months prior to being indicted, creating a total delay of eighteen months or 550 days. The

4

Court has held that a "delay of eight months or longer is presumptively prejudicial." *Johnson v. State*, 68 So. 3d 1239, 1242 (¶ 7) (Miss. 2011) (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)). The *Johnson* Court wrote: "[L]et us be clear[:] when the delay is presumptively prejudicial that does not mean that *actual* prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis." *Johnson*, 68 So. 3d at 1242 (¶ 7). Thus, a delay exceeding eight months serves to trigger an analysis of the remaining *Barker* factors. *Id.*

### 2. *Reasons for the Delay*

¶8.    The only reason for the delay cited by the State and evident from the record is the congested docket. The Court has held repeatedly that "[d]elays caused by overcrowded dockets are not to be weighed heavily against the State." *State v. Magnusen*, 646 So. 2d 1275, 1282 (Miss. 1994) (citing *Adams v. State*, 583 So. 2d 165, 169 (Miss. 1991)); *Kinzey v. State*, 498 So. 2d 814, 817 (Miss. 1986) (did not weigh in favor of defendant because overcrowded dockets were "good cause for continuance"); *Bailey v. State*, 463 So. 2d 1059, 1062-63 (Miss. 1985).[2]    Speedy-trial claims are raised frequently in Hinds County

---

[2] In *Bailey v. State*, the Court recognized that when the delay is the result of unintentional causes, including a crowded docket or that the grand jury did not convene during a certain term, the defendant must show prejudice for the reason-for-delay factor to be weighed against the State. *Bailey*, 463 So. 2d at 1062-63 (citing *Diddlemeyer v. State*, 398 So. 2d 1343, 1344-45 (Miss. 1981) ("The delay in the trial resulted from the fact that the grand jury was not in session when the crime was committed and because of a crowded docket. It was not an unreasonable delay in trial, appellant has not shown prejudice, and we find no merit in this contention."); *Macon v. State*, 295 So. 2d 742, 744 (Miss. 1974) ("The reason for the delay was that a grand jury was not called for the May term. The record is absent of any showing that defendant was prejudiced. Therefore, the Court holds that the defendant was not entitled to be discharged on the asserted ground that he did not receive a speedy trial.")). In *Bailey*, the Court held that unintentional delays – in that case, the grand

5

prosecutions, and the crowded docket is almost always at least part of the reason for the delay. In ***Travis v. State***, 13 So. 3d 320 (Miss. Ct. App. 2008), nearly three years passed from arrest to trial, and the delay was due, in part, to the crowded docket. ***Travis***, 13 So. 3d at 326-27 (¶¶ 18, 22). The Court of Appeals held that Travis did not suffer prejudice and that his right to a speedy trial was not violated. ***Id.*** at 330 (¶ 32). Then-Chief Judge King recognized, "While lamentable, it is nonetheless true that courts in the more populated areas of our state maintain a criminal docket which is so large that delay in bringing defendants to trial is a rueful byproduct." ***Id.*** at 329 (¶ 28).

¶9. In ***Jenkins v. State***, 947 So. 2d 270 (Miss. 2006), the majority of the delay was "attributed to either the state crime lab or the private company subsequently hired to complete the DNA testing requested by the State." ***Jenkins***, 947 So. 2d at 277 (¶ 17). Recognizing that the delays were unintentional and caused primarily by the crime lab, which was "an instrumentality of the State," the Court held that the reason-for-delay factor did not favor either party. ***Id.*** at 277 (¶¶ 17-18). *See also* ***Manix v. State***, 895 So. 2d 167, 176 (¶¶ 18-20) (Miss. 2005) (factor weighed only slightly against the State where delays resulted from crime lab backlog and replacement of the prosecutor); ***Gray v. State***, 728 So. 2d 36, 48 (¶ 34) (Miss. 1998) (delay due to wait for DNA evidence from FBI crime lab "weigh[ed] very slightly, if at all, in favor of the defendant") (citing ***Hull v. State***, 687 So. 2d 708, 730 (Miss. 1996)); ***Magnusen***, 646 So. 2d at 1281 (reasons for delay included: congested trial

---

jury not being convened, negligence in serving a warrant, and a crowded docket – must be considered "with the reminder that prejudice must be shown for ***Macon*** and ***Diddlemeyer*** not to apply." ***Bailey***, 463 So. 2d at 1063.

docket, unavailability of evidence, heavy case load, delays caused by the crime laboratory, several delays attributed to the defendant, and unavailability of the judge; Court held that the reason-for-delay factor favored the State slightly, or "[a]t the very least, it weigh[ed] equally against the State and the defendant"). Because the crowded docket was the only reason for the delay in the instant case, the factor weighs only slightly against the State, if at all.

### 3. *Defendant's Assertion of the Right*

¶10.    Taylor made a speedy-trial demand in August 2008, approximately fifteen months after his arrest and one year after he was indicted; his trial was held three-and-a-half months after he made the demand. "Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." **Bateman**, 125 So. 3d at 630 (¶ 49) (quoting **Taylor v. State**, 672 So. 2d 1246, 1261 (Miss. 1996)). "This Court has held that a defendant's failure to demand a speedy trial between his arrest and indictment is 'critical' to the analysis of a speedy-trial claim." **Bateman**, 125 So. 3d at 630 (¶ 49) (citing **State v. Woodall**, 801 So. 2d 678, 684 (Miss. 2001)). And the Court has weighed the instant factor against defendants who, although they eventually asserted the right, allowed a "significant amount of time" to pass after arrest before demanding a speedy trial. **Bateman**, 125 So. 3d at 630 (¶ 48).

¶11.    In **Bateman**, the defendant asserted his right to a speedy trial two days after he was arraigned, but he had been in custody for 310 days at that time. **Id.** at 631 (¶ 50). The Court noted that the trial court acted promptly after Bateman's demand on February 8, setting his trial date for April 26 – only two-and-a-half months later. **Id.** Because Bateman did not

assert his right to a speedy trial between his arrest and his indictment, the Court held that he had failed to assert it "in a timely manner and offered no evidence of his inability to do so[,]" and the Court weighed the instant factor *against* Bateman. *Id.* Likewise, the Court of Appeals weighed the assertion-of-the-right factor against a defendant where he renewed his demand for a speedy trial on April 6, and trial "was promptly scheduled and held" the following month on May 24. *McGee v. State*, 928 So. 2d 250, 255 (¶ 19) (Miss. Ct. App. 2006). The Court of Appeals weighed the factor only slightly in the defendant's favor where the defendant demanded a speedy trial two-and-a-half years after arrest and indictment, and thereafter "his case was promptly assigned to the court's docket, and he was brought to trial about six months later." *Gray v. State*, 926 So. 2d 961, 972-73 (¶¶ 28, 32) (Miss. Ct. App. 2006).

¶12.　Taylor did not demand a speedy trial between his arrest and indictment; rather, he made the demand one year after he was indicted. The trial court then acted promptly in setting Taylor's trial date for a short three-and-a-half months after he made the demand. Based on the Court's precedent, the instant factor could be weighed against Taylor because he failed to demand a speedy trial in a timely manner. However, because Taylor did eventually make a demand, and because the State and the trial court promptly responded, the factor is neutral.

### 4. *Prejudice to the Defendant*

¶13.　The Court often has held that prejudice did not result and, thus, the defendant's right to a speedy trial was not violated, where the delay was equal to or greater than the delay in

the instant case. In ***Johnson v. State***, 680 days passed from Johnson's arrest to his trial. The delay was presumptively prejudicial, but the only reason for the delay was an overcrowded docket, and Johnson failed to show actual prejudice resulting from the delay, so the Court held that his right to a speedy trial had not been violated. ***Johnson***, 68 So. 3d at 1242-46 (¶¶ 8-22). In ***Moffett v. State***, the delay totaled 1,656 days, "[t]hus, a presumption of prejudice ar[ose], triggering an analysis of the other three factors (reason, assertion, and prejudice)." ***Moffett v. State***, 49 So. 3d 1073, 1087 (¶ 37) (Miss. 2010). The State cited valid reasons for the delay, the defendant had not timely asserted his right to a speedy trial, and the prejudice factor leaned only slightly in the defendant's favor. ***Id.*** at 1087-88 (¶¶ 38-41). Weighing all of the factors, the Court held that the defendant's right to a speedy trial had not been violated. ***Id.*** at 1088 (¶ 42).

¶14. The Court has held that a "delay of 1,430 days, while extreme, did not violate [a defendant's] statutory right to a speedy trial." ***Manix v. State***, 895 So. 2d 167, 175 (¶ 15) (Miss. 2005). In ***Manix***, most of the delay "resulted from the crime lab backlog or appointment of new counsel," so the reason-for-delay factor weighed only slightly against the State. ***Id.*** at 176 (¶ 20). As to prejudice, Manix claimed that the delay resulted in "negative emotional, social, and economic impacts on his life." ***Id.*** at 177 (¶ 23). However, "Mississippi case law does not recognize such impacts as prejudice." ***Id.*** The Court held that Manix's right to a speedy trial was not violated because "any presumptive prejudice Manix may have suffered is overwhelmed by the absence of actual prejudice." ***Id.*** at 177 (¶ 24).

¶15.    In *Sharp v. State*, 786 So. 2d 372 (Miss. 2001), the delay amounted to 731 days, but

the defendant was largely responsible for the delays.  Regarding prejudice, the Court wrote:

> The only prejudicial effect Sharp alleges was caused by the delay was his
> incarceration for nearly two years without a trial. Generally, proof of prejudice
> entails the loss of evidence, death of witnesses, or staleness of an investigation.
> "The possibility of impairment of the defense is the most serious consideration
> in determining whether the defendant has suffered prejudices as a result of
> delay." . . . In the present case, these things did not change; the trial unfolded
> the same as if it had been held much earlier. . . . "[T]he entire drug transaction
> was recorded on a video tape that was viewed by the jury, [Sharp's] potential
> defenses were limited, and no real impairment can be claimed in this case." .
> . . In addition, this Court has held that incarceration alone is not enough to
> warrant a reversal. . . . [H]is entire argument is unconvincing.

*Sharp*, 786 So. 2d at 381 (¶ 19) (internal citations omitted).  Like the arguments in *Manix*

and *Sharp*, Taylor's prejudice argument is unconvincing.

¶16.    To determine whether the delay resulted in actual prejudice, the Court considers three

interests that the right to a speedy trial was meant to protect: "(i) to prevent oppressive

pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit

the possibility that the defense will be impaired." *Jenkins v. State*, 947 So. 2d 270, 277 (¶

21) (Miss. 2006) (quoting *Mitchell v. State*, 792 So. 2d 192, 213 (Miss. 2001); *Barker v.

Wingo*, 407 U.S. 514, 532 (1972)).  Taylor claims that the "most obvious prejudice" he

suffered was "oppressive pretrial incarceration and the anxiety and concern of awaiting trial."

He also claims that his "defense was inherently prejudiced" because he was incarcerated.

Taylor is simply repeating the factors to be considered, and he provides nary a scintilla of

evidence to support his claims.  The Court "will not indulge in an assumption . . . that

[Taylor] experienced anxiety and concern from his incarceration." *Johnson*, 68 So. 3d at

1245 (¶ 17). Finally, Taylor asserts that the delay resulted in his inability to secure an alibi witness. However, he identified no such witness, and he provided no support to substantiate the claim. The Court has held that, generally, "proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation." *Jenkins*, 947 So. 2d at 277 (¶ 21) (citing *Sharp*, 786 So. 2d at 381). Taylor failed to show how his defense was impaired by the delay. The prejudice factor weighs against Taylor.

### 5. *Balancing the* **Barker** *factors*

¶17. The length of delay is presumptively prejudicial and serves to trigger the ***Barker*** analysis. The reason for the delay being the crowded docket weighs only slightly against the State, if at all. Assertion of the right to a speedy trial is neutral. The actual-prejudice factor weighs strongly against Taylor. Because the other factors are neutral or only slightly in Taylor's favor, at best, the unquestionable lack of actual prejudice outweighs the other factors. "[W]here, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting [the defendant's] speedy trial claim." *Watts v. State*, 733 So. 2d 214, 236 (¶ 67) (Miss. 1999) (quoting *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994)). Balancing all the ***Barker*** factors – and considering the overwhelming precedent of what constitutes prejudice and the undisputed absence of actual prejudice here – leads to a holding that Taylor's right to a speedy a trial was not violated.

¶18.   Pursuant to *Lindsey v. State*, the Court has reviewed the briefs and conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal.  Taylor's conviction and sentence are affirmed.

¶19.   **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE (5) YEARS, WITH THREE (3) YEARS SUSPENDED, AND FIVE (5) YEARS SUPERVISED PROBATION, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**RANDOLPH, P.J., LAMAR, CHANDLER, AND PIERCE, CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.; KITCHENS, J., JOINS IN PART. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; WALLER, C.J., JOINS IN PART.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶20.   Because I believe that Taylor's constitutional right to a speedy trial was violated, I respectfully dissent.  I join Presiding Justice Dickinson's dissent in part only to the extent that he finds that a speedy-trial violation occurred under the facts of this specific case.

**DICKINSON, P.J., JOINS THIS OPINION.  KITCHENS, J., JOINS THIS OPINION IN PART.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶21.   Michael Taylor was arrested January 8, 2007.  He filed a motion for a speedy trial on August 21, 2008, and moved to dismiss on speedy-trial grounds November 6, 2008.  When his trial began on December 1, 2008, he asked the trial judge to address his motion to dismiss.  Rather than analyze the speedy-trial issue by applying the ***Barker v. Wingo***[3] factors, the trial judge provided the following dismissive remarks:

---

[3] ***Barker v. Wingo***, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

12

THE COURT: I'll give you time to argue because I want us to hurry up and finish with this. I'm letting her make a record for it because he's got a speedy date, and it's going today, but I'll let her argue the motion for her record.

¶22. The trial judge's statements clearly indicate she never intended to protect—or even consider—Taylor's speedy-trial rights. In fact, the comments evince the trial judge's view that, in Hinds County, Taylor should be thankful he was given a trial at all.

¶23. Taylor's appellate counsel did no better than the trial judge, passing on the opportunity even to brief that issue to this Court, and today's majority would not have addressed it at all, had I not submitted this dissent.[4] So it seems that speedy-trial jurisprudence in this state is so predictable that many feel the issue is not worth addressing.[5] Without apology, however, I shall continue to address it as I have before.[6]

¶24. Here, the majority continues this Court's historic indifference toward this important constitutional right and exposes a fundamental flaw in the paradigm through which this Court has consistently viewed speedy-trial claims: that this fundamental, constitutional right must

---

[4] "Because the dissent disagrees on the speedy-trial issue and addresses that issue in depth, we provide our analysis as well."

[5] *See* **Wells v. State**, No. 2012-KA-01781-SCT, 2015 WL 574761 (Miss. Feb. 12, 2015) *reh'g denied* (April 30, 2015) (not yet released for publication in the permanent law reports) (finding no violation of the right to a speedy trial where the State failed to brief the issue on appeal).

[6] *See* **Myers v. State**, 145 So. 3d 1143, 1152 (Miss. 2014) (Dickinson, P.J., concurring in part and dissenting in part) ("If history teaches us anything, it is that this Court has little interest in a defendant's constitutional right to a speedy trial"); **Johnson v. State**, 68 So. 3d 1239, 1247 (Miss. 2011) (Dickinson, P.J., dissenting) ("[T]oday's final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today's plurality opinion is as subtle as a stick of dynamite—the Sixth-Amendment right to a speedy trial in Mississippi is dead.").

take a back seat to the desire to punish those who are alleged to have committed crimes. To that end, this Court's decisions consistently have found ways to contort, twist, and repackage the speedy-trial test articulated by the United States Supreme Court in ***Barker***[7] to fit the preconceived certainty of doom for all speedy-trial claims in this State.

¶25.   I did not write our Constitution, and neither did any Justice of this Court. But those who did infused it with the idea that the sovereign may not employ any and all means calculated to convict the accused. Rather, we have enshrined in our Constitution the notion that some of the collective power available to impose a societal code of conduct—the law—must give way to certain individual rights that are more important than a conviction. And among those individual rights found in our Constitution is the right to a speedy trial.

¶26.   With little success, I have tried to kindle some modicum of concern for that right on this Court. Although discouraged, I refuse to lay down my pen, recognizing full well that this opinion will join my previous ones in the boneyard of dissents that fell on deaf ears. I too loathe the reality that in some cases—because of errors by law enforcement, the prosecutor, the defense counsel, or the trial court—a person who committed a crime may go free. But I loathe even more the thought that we should move systemically toward eliminating that risk by ignoring important constitutional rights in order to obtain and uphold convictions. That view, history teaches, inevitably leads to tyranny.

¶27.   If in the previous paragraphs I have not been perfectly clear, let me simply state that I believe the Constitution and my oath of office require me to zealously protect constitutional

---

[7] ***Barker***, 407 U.S. at 533.

14

rights, even where that protection is unpopular under a particular set of facts. I recognize that I am bound to apply the binding precedent of the United States Supreme Court in *Barker*, which many of the opinions cited by the majority have failed to do. This I will try to do. With those thoughts in mind, I would find that Taylor's right to a speedy trial indeed was violated, and I would reverse his conviction. So I respectfully dissent.

## I. The *Barker* Decision and this Court's Speedy-Trial Precedent

¶28. The constitutional right to a speedy trial, guaranteed by the Sixth Amendment to the United States Constitution[8] and Article 3, Section 26 of the Mississippi Constitution,[9] attaches "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge."[10] We are required to analyze speedy-trial claims through the framework set out by the United States Supreme Court in *Barker v. Wingo*.[11]

¶29. The *Barker* test balances four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.[12] The *Barker* Court also held that the four factors "must be considered together with such other circumstances as may be relevant," and that "because we are dealing with a

---

[8] U.S. Const. amend. VI.

[9] Miss. Const. art. 3, § 26.

[10] *Handley v. State*, 574 So. 2d 671, 674 (Miss. 1990) (quoting *Lightsey v. State*, 493 So. 2d 375, 378 (Miss. 1986), *superceded by statute on other grounds*).

[11] *Handley*, 574 So. 2d at 674 (citing *Barker*, 407 U.S. at 514).

[12] *Barker*, 407 U.S. at 530.

15

fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."[13]

*Whack-A-Mole Jurisprudence*

¶30. Unfortunately, this Court has not faithfully applied the ***Barker*** balancing test. Today's majority provides an excellent analysis of this Court's opinions over the years, which seemingly have played Whack-A-Mole with the ***Barker*** factors. Every time a factor pops up that appears to favor the defendant, this Court whacks it into conformity with the desire to affirm.

¶31. For instance, when the ***Barker*** Court articulated the first prong of its test—the length of the delay—it stated that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[14] In 1991, this Court found that the presumptively prejudicial threshold of eight months[15] shifted the burden to the State, stating specifically that "[w]here the delay has been presumptively prejudicial, the burden falls upon the prosecution."[16]

¶32. But this obvious conclusion—that "presumptively prejudicial" means prejudice is presumed, shifting the burden to the State—did not sit well with later majorities. When it

---

[13] ***Id.*** at 533.

[14] ***Id.*** at 530.

[15] ***Johnson***, 68 So. 3d at 1242 (citing ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989)).

[16] ***State v. Ferguson***, 576 So. 2d 1252, 1255 (Miss. 1991), *abrogated by* ***Johnson***, 68 So. 3d at 1243.

16

began to appear that defendants were experiencing long delays—some for years—and some were coming dangerously close to winning a speedy-trial motion, this Court changed directions by announcing that "presumptively prejudicial" does not really mean that prejudice is presumed, and amazingly, that "presumptively prejudicial" has nothing to do with the "prejudice" factor of the *Barker* analysis.[17]

¶33.    So, today, the phrase "presumptively prejudicial"—taken from *Barker* itself—does not mean what it says.  But I believe *Barker's* statement can be read only one way: "presumptively prejudicial" must mean that prejudice is presumed.

¶34.    Another example is found in this Court's analysis of the "reason for the delay" factor. In *Barker*, the United States Supreme Court stated that, while a deliberate attempt by the government to stall trial must weigh heavily against the State,

> [a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily *but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.*"[18]

¶35.    So, according to *Barker*, a trial court's crowded docket weighs the reason-for-the-delay factor against the State, although not as heavily as it would in cases where the State deliberately stalls the trial.  That idea was not popular here.  In cases where defendants have shown that long delays were not their fault, this Court says that "in the absence of a showing of prejudice to the defendant, a delay attributable solely to [crowded dockets] does not

---

[17] *Johnson*, 68 So. 3d at 1247.

[18] *Barker*, 407 U.S. at 531 (emphasis added).

17

violate the defendant's right to a speedy trial."[19] But under **Barker**, this delay weighs against the State regardless of prejudice.

¶36.    Here is another one.   Under the third prong—the defendant's assertion of his right—the **Barker** Court stated that "[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process."[20]   And, while a defendant must demand a speedy trial to win this factor, the Supreme Court has made it quite clear that the timing of the defendant's assertion should not weigh against him because:

> Since under the demand-waiver rule no time runs until the demand is made, the government will have whatever time is otherwise reasonable to bring the defendant to trial after a demand has been made. Thus, if the first demand is made three months after arrest in a jurisdiction which prescribes a six-month rule, the prosecution will have a total of nine months—which may be wholly unreasonable under the circumstances. The result in practice is likely to be either an automatic, pro forma demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. Such a result is not consistent with the interests of defendants, society, or the Constitution.[21]

This is a clear rejection of this Court's view that because the defendant "failed to assert his right to a speedy trial in a timely manner . . . , we must weigh this factor against" him.[22]

---

[19] **Bailey v. State**, 463 So. 2d 1059, 1062-63 (Miss. 1985) (citing **Macon v. State**, 295 So. 2d 742 (Miss. 1974); **Diddlemeyer v. State**, 398 So. 2d 1343 (Miss. 1981)).

[20] **Barker**, 407 U.S. at 527.

[21] **Id.** at 527-28.

[22] **Bateman v. State**, 125 So. 3d 616, 631 (Miss. 2013).

18

¶37. Finally, this Court's recent precedent on the fourth prong—prejudice—conflicts with *Barker* in several ways. First, as discussed above, recent majorities simply refuse to presume prejudice from a presumptively prejudicial delay. Second, this Court has found the existence of "actual prejudice" is required for a speedy-trial claim. For instance, in *Johnson v. State*, the defendant clearly won on three *Barker* factors—length of delay, reason for delay, and assertion of the right.[23] And in addressing the prejudice factor, the majority said "'that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim.'"[24] In other cases, this Court has gone even further and said that any prejudice caused by "incarceration alone is not enough to warrant a reversal"[25] and that "[a] defendant's assertion of prejudice attributable solely to incarceration, with no other harm, typically is not sufficient to warrant reversal."[26]

¶38. This stands in clear contradiction to the United States Supreme Court's finding that:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[27]

---

[23] *Johnson*, 68 So. 3d at 1241-46.

[24] *Id.* at 1246 (quoting *Stevens v. State*, 808 So. 2d 908, 918 (Miss. 2002)).

[25] *Sharp v. State*, 786 So. 2d 372, 381 (Miss. 2001) (citing *McGee v. State*, 608 So. 2d 1129, 1130 (Miss. 1992); *Ross v. State*, 605 So. 2d 17, 23 (Miss. 1992)).

[26] *Ross*, 605 So. 2d at 23.

[27] *Barker*, 407 U.S. at 533.

Stated another way, courts may not pick out one factor, such as prejudice, and hold that the defendant must win on it to prevail on a speedy-trial claim. The opposite is the law in Mississippi. A defendant who cannot show actual prejudice cannot win a speedy-trial motion, even though the State has won on no factor.[28] And this statement has meaning for the defendant and meaning for the State. As to the defendant, it is not "necessary" to show prejudice to win. And for the State, a showing of prejudice, no matter how pronounced, is not "sufficient" for a reversal.

¶39. As a final example, a majority of this Court holds that "Mississippi case law does not recognize [negative emotional, social, and economic] impacts [of incarceration] as prejudice."[29] This view stands in stark contrast to the ***Barker*** Court's specific statement that:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. . . . Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.[30]

¶40. In sum, it is clear that this Court has shown little regard for binding precedent from the United States Supreme Court interpreting a protection guaranteed by the United States Constitution. I will now attempt faithfully to apply that precedent.

---

[28] ***Johnson***, 68 So. 3d at 1246.

[29] ***Manix v. State***, 895 So. 2d 167, 177 (Miss. 2005).

[30] ***Barker***, 407 U.S. at 532.

## II. The Correct *Barker* Balancing Test Applied to this Case

¶41. The material facts in this case are not disputed. Taylor was arrested on January 8, 2007, and held on other charges until May 31, 2007. At that time he was set to be released, but he remained in custody because he had been indicted for the present charges. He demanded a speedy trial on August 21, 2008, and moved to dismiss on speedy-trial grounds on November 6, 2008. His trial began on December 1, 2008. No party ever requested a continuance. On these facts, I must conclude that Taylor was denied his constitutional right to a speedy trial.

### *Length of the Delay*

¶42. The speedy-trial clock begins to run at the arrest.[31] Taylor was arrested January 8, 2007. But his arrest stemmed from his possession of a firearm and narcotics on that day, not the charges precipitating this appeal. Instead, the parties agree that Taylor was "released" on the unrelated charges May 31, 2007, but remained in custody for the present charges. So Taylor was effectively arrested for these charges that day, and the speedy-trial clock began to run then. From May 31, 2007, until the trial began on December 1, 2008, 550 days, or eighteen months, elapsed.

¶43. Any delay that exceeds eight months is presumptively prejudicial.[32] So this prong weighs in Taylor's favor. But the circuit judge wholly failed even to recognize Taylor's presumptively prejudicial delay, let alone balance it with other factors. The following

---

[31] *Handley*, 574 So. 2d at 674 (citing *Smith*, 550 So. 2d at 408).

[32] *Johnson*, 68 So. 3d at 1242 (citing *Smith*, 550 So. 2d at 408).

excerpt from the record clearly demonstrates not only the trial judge's dismissive and erroneous view of Taylor's right to a speedy trial, but her inappropriate prejudgment of his claim of error and failure to recognize this presumptive prejudice:

> THE COURT: I'll give you time to argue because I want us to hurry up and finish with this. I'm letting her make a record for it because he's got a speedy date, and it's going today, but I'll let her argue the motion for her record.

So the trial judge erred in failing to view the length of delay as presumptively prejudicial and in failing to weigh this factor against the State.

### *Reason for the Delay*

¶44. Neither party requested any continuance in this case. Instead, December 1, 2008, was the only date ever set for trial. When ruling on the motion to dismiss, the trial judge stated:

> With reference to the demand for a speedy trial, the Court is going to deny the motion to dismiss for failure to provide a speedy trial. This case was indicted in May of 2007. Although it's been over a year since that time, there's circumstances both relative to this Court's docket in terms of the speediness of him getting a trial before 12 of his peers.

> The Court finds that there is no prejudice. The rules state that there is arose [sic] circumstances that are outlined that are well within the rules of law which provide that there has been no violation.

¶45. So the trial judge's only statement concerning the reason for the delay was her cryptic reference to "circumstances both relative to this Court's docket in terms of the speediness of him getting a trial before 12 of his peers." Taylor was not told what those "circumstances" were.[33] Neither party presented any evidence of another reason.

---

[33] As this case demonstrates, this Court assumes—as a matter of law with no proof required—that Hinds County Circuit Court dockets are perpetually crowded. This has not gone unnoticed by the State, which has learned that, in Hinds County, it will win the "reason for the delay" ***Barker*** factor without bothering to offer any proof or argument. In light of

¶46. This Court has stated that "[w]here the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution."[34] Here, it is indisputable that Taylor did not cause the delay, and the prosecution showed nothing at all with respect to the delay. And the *Barker* Court noted that the prosecution ultimately bears the burden to ensure that the case goes to trial.[35] So, where unexplained "circumstances" cause the delay, this factor must be weighed against the State.[36]

¶47. The trial judge seemed to misapprehend this prong. At the outset of the speedy-trial arguments, this exchange occurred between Taylor's attorney and the trial judge:

> MS. LEGGETT: Also, Your Honor, for the record, I would like to argue the motion to dismiss based upon failure to provide a speedy trial.

> THE COURT: This was by August of this year, and it's an '07, and it's two counts. You may proceed briefly because it's quite speedy in Hinds County.

¶48. These dismissive comments expose two facts about how the trial judge analyzed Taylor's speedy-trial claim. First, she weighed the reason-for-the-delay factor against Taylor, and second, she believed a defendant's right to a speedy trial was somehow diminished

---

the seemingly desperate condition of the Hinds County trial docket, I find it interesting that, of the seven new trial-judge positions the Legislature created around the State this year, not a single one was created in Hinds County.

[34] *Handley*, 574 So. 2d at 674 (quoting *Perry v. State*, 419 So. 2d 194, 199 (Miss. 1982)).

[35] *Barker*, 407 U.S. at 531.

[36] *Id.*

because the case was filed in Hinds County. Both views expose flawed constitutional reasoning.

¶49. In **Barker**, the United States Supreme Court specifically noted that a delay based on overcrowded dockets must be weighed against the State.[37] This, according to the **Barker** Court, is necessarily so because the State ultimately bears the burden to bring the accused to trial.[38] While it is true that this reason may weigh against the State to a lesser degree than an intentional delay on the State's part, we are required by precedent from the United States Supreme Court to weigh this factor against the State. Hinds County very well may suffer from crowded dockets. If that is true, it is the State's decision not to fund more courts and judges that makes it so.

### The Defendant's Assertion of His Right

¶50. It is undisputed that Taylor demanded a speedy trial on August 21, 2008, and moved to dismiss the charges on November 6, 2008. In **Jenkins v. State**, this Court weighed this factor in the defendant's favor when he asserted his right 433 days after his arrest.[39] Here, Taylor demanded a speedy trial 448 days after his "release" on the unrelated charges and his "arrest" on the present charges. So I would weigh this factor in Taylor's favor.

### *Prejudice*

---

[37] ***Id.***

[38] ***Id.***

[39] ***Jenkins v. State***, 947 So. 2d 270, 277 (Miss. 2006).

24

¶51.   Any delay beyond eight months is presumptively prejudicial.[40]  The State presented

no evidence in the trial court to rebut the presumption of prejudice.  So this factor should be

weighed in Taylor's favor.

### Other Relevant Factors

¶52.   The *Barker* court stated that the four factors "must be considered together with such

other circumstances as may be relevant."[41]  I would find that, in addition to the four-factor

analysis above, the trial judge's dismissive remarks and lack of concern with Taylor's

speedy-trial claim should be weighed against the State:

> MS. LEGGETT: Also, Your Honor, for the record, I would like to argue the
> motion to dismiss based upon failure to provide a speedy trial.
>
> THE COURT: This was by August of this year, and it's an '07 case, and it's
> two counts. You may proceed briefly because it's quite speedy in Hinds
> County.
>
> . . .
>
> THE COURT: I'll give you time to argue because I want us to hurry up and
> finish with this. I'm letting her make a record for it because he's got a speedy
> date, and it's going today, but I'll let her argue the motion for her record.

¶53.   These comments show the trial judge's complete lack of objectivity or concern for the

constitutional right to a speedy trial.  And her remarks border on bitterness and contempt for

a defendant who would dare raise such a claim in Hinds County.  She begrudgingly allowed

Taylor's counsel to create a record for appeal, never intending actually to consider Taylor's

claim.  Before any argument had been made, her decision had been made.

---

[40] *Johnson*, 68 So. 3d at 1242 (citing *Smith*, 550 So. 2d at 408).

[41] *Barker*, 407 U.S. at 533.

¶54. In sum, Taylor suffered a presumptively prejudicial delay, and the State has not rebutted the presumed prejudice. The reason for the delay—either unexplained or crowded dockets—must lie at the feet of the State, which ultimately bears the burden to bring the accused to trial. Taylor asserted his right, and the circuit judge met his assertion with disinterest and contempt. All four *Barker* factors weigh in the defendant's favor, and this case presents a compelling additional circumstance which also supports his cause. So I must conclude that Taylor's right to a speedy trial was violated.

**KITCHENS AND KING, JJ., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.**